IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**KEVIN TAMAR DAVIS,**

    **Plaintiff,**

    v.                                          CASE NO. 24-3143-JWL

**JESSE HOWES, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, Kevin Tamar Davis, who is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. The Court finds that the proper processing of Plaintiff's claims in Counts I and II cannot be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials. The Court also orders Plaintiff to show good cause, in writing to the undersigned, why Plaintiff's claims in Count III should not be dismissed for failure to state a claim.

**I. Nature of the Matter before the Court**

Plaintiff alleges that he has a bifurcated dental issue that causes chronic pain "due to an enlarged cyst growing in [his] superior maxillary, maxilla, or upper skull face bone." (Doc. 1, at 5.) Plaintiff believes, based on information from prior oral examiners, that if the bone tissue decay enters into Plaintiff's sinuses it would cause instant death. *Id*. Plaintiff alleges that he was sent to an oral surgeon, Dr. Arron Sterling, on June 16, 2023. *Id*. Dr. Sterling examined Plaintiff's bifurcated dental condition and referred Plaintiff to a Special Oral Surgeon (endodontic) that was more specialized with Plaintiff's condition. *Id*. Dr. Card did a consultation with Plaintiff that included x-rays. *Id*. at 6.

Plaintiff alleges that a dental aide told Plaintiff that Dr. Cannon, KDOC's Regional Dental director at LCF, denied Dr. Card's referral because there was no dental specialist contracted with the KDOC to perform the bifurcated surgery, and instead Dr. Cannon recommended extraction of two (good) front teeth with replacement via partial dentures. *Id*.

Plaintiff alleges that in 2001, his left hand suffered paralysis due to a motor vehicle incident. *Id*. Plaintiff claims that he entered KDOC custody in 2015 with a splint on his left hand. *Id*. Plaintiff states that he was given the privilege of using the state-issued canteen bag for carrying his legal materials. *Id*. Because the straps on the bag often break, Plaintiff purchased a black, cardboard "satchel" for $50 "to enable his disability." *Id*. at 7. Plaintiff carried the satchel for two years, and when he was transferred to the Hutchinson Correctional Facility ("HCF") in 2020 he was cleared to continue using the state-issued canteen bag.[1] *Id*. When he was transferred back to LCF in 2021, he was still allowed to carry the canteen bag/satchel. *Id*. Plaintiff alleges that on December 6, 2023, James Skidmore and Warden Howes restricted Plaintiff's use of the bag/satchel "without any immediate threat to security of the institution." *Id*.

Plaintiff claims that his physician-approved splint was confiscated at HCF on January 16, 2018, and the metal support plate was removed. *Id*. Plaintiff was provided with a new premier wrist brace (splint) without the metal plate on March 3, 2018, and with a second brace/splint on February 12, 2019. *Id*.

Plaintiff received medical approval for medical shoes on February 16, 2022, due to a prior injury. *Id*. at 7–8. On November 6, 2023, Dr. Mariah Kalma found that Plaintiff should continue to be approved for both medical shoes and the wrist brace/splint. *Id*. at 8. At a sick call on December 20, 2023, Plaintiff was notified that HSA Jeanie Burk denied Dr. Kalma's request

---

[1] At times Plaintiff appears to distinguish the canteen bag and the satchel, and at other times uses the terms interchangeably. *See, e.g.,* Doc. 1, at 7 (stating that he "was permitted without any molestation to make use of the state issuing canteen bag, &c., i.e., 'Satchel'").

for the splint and shoes. *Id*. Burk told Plaintiff he could not receive the medical shoes because he did not have diabetes. *Id*.

As Count I, Plaintiff alleges that Defendants Howe and Cannon acted with deliberate indifference to his serious medical needs regarding his need for dental surgery. *Id*. at 10. As Count II, Plaintiff alleges that Defendant Burke was deliberately indifferent to Plaintiff's need for medical equipment and a medical appliance. *Id*. As Count III, Plaintiff alleges that the seizure of his satchel—that he purchased at a fundraiser—by Defendants Howes and Skidmore constituted petit larceny and profiteering under the "Anti Trust Law of 1897."

Plaintiff names as defendants: Jesse Howes, LCF Warden; James Skidmore, LCF Deputy Warden; Fred Cannon, KDOC Regional Dental Director at LCF; and Jeanie Burk, KDOC Health Services Administrator ("HSA") at LCF. Plaintiff seeks compensatory, punitive, and nominal damages, declaratory relief, and injunctive relief. *Id*. at 11.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A

court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*,

561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III. DISCUSSION

#### 1. Count III

Plaintiff claims in Count III that Defendants Howes and Skidmore committed petit larceny.  Plaintiff does not have a private cause of action to enforce criminal laws. *See Droge v. Rempel*, 180 P.3d 1094, 1097 (Kan. App. 2008) (" 'Kansas appellate courts generally will not infer a private cause of action where a statute provides criminal penalties but does not mention civil liability.' ") (quoting *Pullen v. West*, 92 P.3d 584, 597 (Kan. 2004)); *see also LeTourneau v. Venture Corp.*, Case No. 15-cv-2629-JAR, 2017 WL 2378331, at *6 (D. Kan. June 1, 2017) ("the Court is unwilling to infer a private cause of action for a statute with solely criminal penalties"); *cf. Sullivan v. Univ. of Kansas Hosp. Auth.*, 844 F. App'x 43, 51 (10th Cir. 2021) (unpublished) ("[T]he statutory provisions outlawing obstruction of justice do not provide a private cause of action.") (citation omitted).

Plaintiff also alleges that Defendants' actions constituted profiteering under the "Anti Trust Law of 1897."  Plaintiff has provided no facts whatsoever to suggest that Defendants

violated antitrust laws.

Plaintiff attaches a grievance response dated March 14, 2024, that suggests an exception was made to allow him to carry "a store bag" when going to the library. *See* Doc. 1–1, at 56–57; Doc. 2, at 8 (noting Plaintiff was allowed to carry "his store canteen bag when traveling to the library"); Doc. 2, at 13 (stating that Plaintiff is allowed to carry "a store bag" when going to the library).

Even if Plaintiff's claims regarding his bag are not moot, any claim regarding the loss of his property would be subject to dismissal. Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has failed to allege that an adequate post-deprivation remedy was unavailable.

Plaintiff should show good cause why his claims his Count III should not be dismissed for failure to state a claim. Because Count III is the only claim asserted against Defendant Skidmore, Plaintiff should also show good cause why Defendant Skidmore should not be dismissed from this action.

**2. Counts I and II**

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs

6

regarding the denial of necessary dental surgery,[2] and the denial of Plaintiff's hand splint and the denial—because he is not diabetic—of his medical shoes.[3]  (Doc. 1, at 5–8.)

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the

---

[2] The November 14, 2023 response from LCF's Medical Department states that Plaintiff had:

> 20 dental encounters since 1/1/23, including visits with Dr. Cannon.  Dental has discussed the previous failed apical surgery which has led to the cyst and chronic infection he is currently complaining of.  Mr. Davis has been sent off-site to oral surgery per his request.  Dental recommendations have consistently been extraction of teeth 9 and 10, with replacement via partial dentures.  Mr. Davis has declined the treatment plan and requested time to consider this option.  Extraction is the recommendation by Dr. Cannon per his notes.

(Doc. 1–1, at 19.)

[3] The March 14, 2024 grievance response indicates that Plaintiff was examined and the findings did not support his request for a wrist brace and medical shoes.  *See* Doc. 1–1, at 57.

7

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)); *see also Stack v. McCotter*, 79 F. App'x 383, 390 (10th Cir. 2003) (unpublished) (noting that an extraction-only policy "was also used as a device for unreasonably delaying treatment").

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v.*

*Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted); *see also Dudley v. KDOC*, 2023 WL 3686566, at *2 (D. Kan. 2023) (noting that the *Martinez* Report did not address whether Centurion has a blanket policy of denying root canals and crowns based on financial considerations and instead requires extractions, and stating that "[a]t least one panel of the Tenth Circuit has held that an extraction-only policy may be constitutionally deficient under certain circumstances") (citing *Stack v. McCotter*, 79 F. App'x 383, 390 (10th Cir. 2003)).

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).

Accordingly, the Court orders the appropriate KDOC officials to prepare and file a *Martinez* Report. Once the Report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A.

## IV. Motions

### 1. Motion to Appoint Counsel (Doc. 8)

Plaintiff seeks appointment of counsel, arguing that he is unable to afford counsel, his imprisonment will greatly limit his ability to litigate, the issues are complex and will require significant research and investigation, he has limited access to the law library, he has limited knowledge of the law, a trial will likely involve conflicting testimony, and counsel would be better able to present evidence and cross examine witnesses. (Doc. 8, at 1.) Plaintiff also sets forth his unsuccessful attempts at obtaining counsel. *Id*.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

**2. Motion for Extension of Time (Doc. 12)**

Plaintiff has filed a motion seeking an extension of time to submit his initial partial filing fee. The initial partial filing fee was submitted on September 20, 2024. Therefore, the motion for extension of time is denied as moot.

**3. Motion for Immediate Help (Doc. 13)**

Plaintiff asks the Court to use its discretion "to consider whether [Plaintiff] should or should not have to pay." (Doc. 13, at 1.) If Plaintiff is asking this Court to waive the remainder of his filing fee, the request is denied. When the Court granted Plaintiff leave to proceed in forma pauperis, it advised Plaintiff that "Plaintiff remains obligated to pay the remainder of the $350.00 filing fee. The agency having custody of plaintiff shall forward payments from plaintiff's account in installments calculated under 28 U.S.C. § 1915(b)(2)." (Doc. 11.) The Court received Plaintiff's initial partial filing fee in the amount of $38.50 on September 20, 2024. Plaintiff remains obligated to pay the remainder of the filing fee in installments under 28 U.S.C. § 1915(b)(2).

Plaintiff also asks the Court to order Defendants to provide a referral to an outside dental specialist to perform his requested apicoectomy root end surgery and to order Defendants to

provide him with the special hand brace.  *Id*. at 2.  This is the same relief Plaintiff is requesting in his Complaint.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation.  18 U.S.C. § 3626(a)(2).  Finally, a mandatory

preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above.  *Little*, 607 F.3d at 1251.  Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

Plaintiff's Complaint has not passed screening and the Court has ordered a *Martinez* Report.  The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted at this time; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.  The Court denies the motion without prejudice to refiling if Plaintiff's Complaint survives screening.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Appointment of Counsel (Doc. 8) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time (Doc. 12) is **denied as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Immediate Help (Doc. 13) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **October 28, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims in Count III should not be dismissed for failure to state a claim.  Failure to respond by the deadline may result in dismissal of the claims in Count III without further notice for failure to state a claim.

**IT IS FURTHER ORDERED** that:

(1)  The Court will enter a separate e-service order directing the Clerk of Court to

serve Defendants Howes, Cannon, and Burk.

(2) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **thirty (30) days** following the electronic filing of the Waiver of Service Executed.  Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order setting an answer deadline.  Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) KDOC officials are directed to undertake a review of the subject matter of the Complaint:

   a. To ascertain the facts and circumstances;

   b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

   c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5) Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical

or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(6) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(8) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendants, counsel for the KDOC, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated September 27, 2024, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**