**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KEVIN TAMAR DAVIS,**

     **Plaintiff,**

     **v.**                         **CASE NO. 24-3143-JWL**

**JESSE HOWES, et al.,**

     **Defendants.**

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff, Kevin Tamar Davis, who is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. On September 27, 2024, the Court entered a Memorandum and Order (Doc. 14) ("M&O") finding that the proper processing of Plaintiff's claims in Counts I and II could not be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials. Accordingly, the Court ordered KDOC officials to prepare and file a *Martinez* Report for the claims in Counts I and II. The Court also directed Plaintiff to show good cause why his claims in Count III should not be dismissed. Plaintiff's claims in Count III were subsequently dismissed. (Doc. 18.)

The Court's M&O provides that "[o]nce the Report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A." (Doc. 14, at 10.) The *Martinez* Report (Doc. 20) (the "Report") has now been filed, and Plaintiff has filed a response (Doc. 25) and an objection to the Report (Doc. 26). The Court's screening standards are set forth in detail in the M&O.

## I. Nature of the Matter before the Court

Plaintiff's factual allegations are set forth in detail in the Court's M&O.  In summary, Plaintiff alleges in Count I that Defendants Howe and Cannon acted with deliberate indifference to his serious medical needs regarding his need for dental surgery.  Plaintiff alleges that he is being denied dental surgery recommended by Dr. Card.  Plaintiff alleges that he was told that Dr. Cannon, KDOC's Regional Dental director at LCF, denied Dr. Card's referral because there was no dental specialist contracted with the KDOC to perform the bifurcated surgery, and instead Dr. Cannon recommended extraction of two (good) front teeth with replacement via partial dentures.

As Count II, Plaintiff alleges that Defendant Burke was deliberately indifferent to Plaintiff's need for medical equipment and a medical appliance.  Plaintiff alleges that despite Dr. Mariah Kalma's finding that Plaintiff should continue to be approved for both medical shoes and the wrist brace/splint, HSA Jeanie Burk denied Dr. Kalma's request for the splint and shoes, informing Plaintiff that he could not receive the medical shoes because he did not have diabetes.

## II. The Report

The Report provides that Plaintiff "has been diagnosed with a chronic apical cyst due to reinfection of the canal space and periapical tissues near his #9 and #10 teeth that have been treated prior to his incarceration."  (Doc. 20, at 3.)  The Report provides that Plaintiff "has already received previous apicoectomies for the affected teeth and that additional treatment the same way would likely result in reinfection" and "[o]n May 11, 2023, Mr. Davis's tooth #9 was considered a non-restorable tooth therefore extraction and replacement with a denture is the ideal treatment."  *Id*.  The Report provides that Plaintiff has refused extraction of teeth #9 and #10.  *Id*. at 4.

Dr. Cannon's affidavit provides that on May 11, 2023, Plaintiff was "informed that additional endodontic treatments such as an apicoectomy or retreatment of root canals could not be completed as tooth #9 may have a fractured root that is causing the abscess and is therefore a non-restorable tooth."   (Doc. 20–3, at ¶ 10.)   Dr. Cannon also declares that Plaintiff was evaluated by Dr. Sterling Card, and after the evaluation, Dr. Cannon discussed the evaluation with Dr. Card and "he recommended extraction of teeth #9 and #10." *Id*. at ¶ 13.  Dr. Cannon's affidavit further provides that:

> 13.  On June 16, 2023, Mr. Davis left the facility for an offsite evaluation performed by Dr. Sterling Card, an oral and maxillofacial surgeon located in Leavenworth, KS. After discussing the evaluation with Dr. Card, he recommended extraction of teeth #9 and #10. Dr. Card also stated that Mr. Davis expressed his desire to keep his teeth and to have endodontic treatment performed. Dr. Card made the note that Mr. Davis wanted to have endodontic treatment performed but Dr. Card's recommendation was to extract teeth #9 and #10.
>
> 14.  On June 27, 2023, Mr. Davis presented for a Dental Exam. I observed and recorded the damage to teeth #9 and # 10 that were caused by previous failed endodontic treatments and advised Mr. Davis of the complications and risks associated with leaving the failed teeth in his Maxilla. Mr. Davis stated that he wanted more time to make a decision on the extraction of his teeth and for staff to continue to monitor the area and treat the teeth with antibiotics as needed. I agreed to give Mr. Davis more time to decide and set up a monitoring system that involves regular exams and x-rays.
>
> 15.  On October 26, 2023, Mr. Davis presented for a Dental Exam. No changes were reported, and it was recommended to Mr. Davis that the teeth must be extracted.
>
> 16.  On November 19, 2023, Mr. Davis presented for a Dental Exam and requested the cyst be removed with endodontic treatment. Mr. Davis was advised that teeth #9 and # 10 need to be extracted to remove the cyst and prevent future infection.
>
> 17.  On November 21, 2023, Mr. Davis presented for a Dental Exam. The Dentist compared the x-rays taken on previous visits and observed a minimal level of bone loss, if any could be observed at all.
>
> 18.  On January 23, 2024, Mr. Davis continued to request endodontic treatment on teeth #9 and #10. Mr. Davis was advised that the endodontic treatments had failed in the past and the teeth

have to be extracted to prevent continuing infection. Mr. Davis
refused treatment.

19. On February 22, 2024, Mr. Davis requested his sixth antibiotic
refill. He was advised that continually treating the symptoms of the
infection with antibiotics is not a solution and can put his health at
risk. It was expressed to Mr. Davis that teeth #9 and # 10 need to
be removed. Mr. Davis was adamant that he would receive
endodontic treatment.

20. On March 5, 2024, Mr. Davis once again requested antibiotics
to bring swelling down on teeth #9 and #10. He was once again
advised of the risks and told that the teeth need to be extracted.

21. With a degree of dental certainty, it is possible for an oral
infection to spread, leading to a severe abscess, which may harm a
patient's life and health.

22. The cyst has formed above teeth #9 and #10 due to a recurring
infection in these teeth that Mr. Davis has held throughout his life.
It is my opinion that the cyst has formed above these teeth to form
a barrier with the objective of preventing the infection from
spreading. Endodontic treatments prior to Mr. Davis' incarceration
have failed at preventing the infection from recurring.

23. Extraction of the infected teeth is Mr. Davis' best option to
prevent recurring infections and is within the scope of performance
at Lansing Correctional Facility.

24. Mr. Davis has been given numerous opportunitites to have his
teeth extracted and has been advised of the risks associated with
continuing to leave the teeth in. Yet, Mr. Davis has continually
refused such treatment.

25. It is my opinion to a reasonable degree of dental certainty that
extraction of teeth #9 and #10 is the best option for Mr. Davis. All
along, our recommendation has been extraction of the infected
teeth and treating the infection. We will then provide Mr. Davis
with a denture for teeth #9 and #10. Mr. Davis has continually
refused this treatment.

*Id*. at ¶¶ 13–25.

The Report includes a copy of Internal Management Policy & Procedure ("IMPP")

102D.  (Doc. 20–5, at 13–16.)  The IMPP provides that KDOC residents "are to receive timely

oral screening, examination, and treatment (not limited to extractions) for dental conditions that

would otherwise adversely impact the resident's health."  *Id*. at 13.  Oral Treatment is defined as

"[a] full range of services that are necessary in the judgement of the supervising dentist."  *Id*.

The IMPP provides that "[r]eferrals to dental specialists and oral surgeons must be available as clinically indicated and when such treatment falls outside of the scope or professional capability of the facility dentist upon approval of the Regional Dental Director." *Id*. at 15.

Regarding Plaintiff's medical devices, the Report provides that:

> Generally, the issuance of an appliance is not an indefinite order as a patient's medical needs may change over time for any number of reasons and must be re-evaluated to determine if any medical needs still exist. *Id*., ¶ 7 . Mr. Davis had not been evaluated for the medical appliances as early as 2022 when the appliances were initially afforded to him and needed to be re-evaluated for the medical appliances to be approved for both his feet and the left wrist. (Medical Records, page 89). The evaluation itself showed there to be no significant signs of impairment warranting the issuance of the medical devices as detailed in the Affidavit of Jeanie Burk. Exhibit 4, ¶ 7.
>
> While Ms. Burk did leave employment with Centurion in April 2024, this did not stop medical treatment for Mr. Davis regarding the medical appliances. Davis was scheduled to be seen outside of LCF by an orthopedic hand specialist in which a splint was put on him that day of April 3, 2024. (Medical Records, page 55-61). On 7/18/2024, "Lifewalker strap shoes" where [sic] issued to Mr. Davis per his medical records. (Medical Records, page 87-90). Mr. Davis appears to have been doing much better since the filing of his complaint as he was recently seen by medical staff for shortness of breath after having played a recent game of basketball on October 10, 2024, with no mention of the pains he claims to have suffered to his feet and wrist. (Medical Records, page 1-3).

(Doc. 20, at 4–5.)

The Report also provides that Plaintiff's claims appear to not have been properly exhausted. *Id*. at 5.

## III. Plaintiff's Response/Objection

Plaintiff filed a response (Doc. 25) in which he sought to have the KDOC supplement the Report. Plaintiff claims that affidavits were not obtained for: Dr. Sterling Card, Oral & Maxillofacial Surgeon; Dr. Kalma, APRN; Angela Sutton, LCF Centurion new HSA; and Mrs.

Racheal, Dental Aide. (Doc. 25, at 2.) The Court granted the KDOC an opportunity to either supplement the Report or to indicate why the requested affidavits are either unavailable or irrelevant. The KDOC responded, indicating that the requested affidavits were either irrelevant or "improper at this stage of the litigation." (Doc. 28, at 2.) The KDOC's response notes that the information included in the Report shows the medical treatment Plaintiff received and that:

> Dr. Sterling Card is not a Centurion medical provider . . . [and] Dr. Card, Dr. Kalma, APRN, nor Dental Aide Mrs. Rachel are likely to produce any further relevant information that cannot already be found within the provided medical records or from the provided affidavits. Additionally, the new LCF Centurion HSA, Angel Sutton, will provide essentially a similar affidavit of that of Ms. Burke, thus anything provided by Ms. Sutton would simply be duplicative and irrelevant to purpose [sic] of this stage of the proceedings.

*Id*.

Plaintiff has also filed an objection to the Report (Doc. 26). Plaintiff objects to the Report, arguing that relevant affidavits and statements of fact were omitted from the Report. (Doc. 26, at 1.) Plaintiff takes issue with the Report indicating that at his recent dental visit he did not mention pain regarding the cyst or teeth. Plaintiff alleges that on November 6, 2024, He "did in fact mention pain or fear." *Id*. at 2.

Plaintiff also asserts that he did in fact appropriately exhaust all administrative remedies for his claims. *Id*. at 3. Plaintiff continues to maintain that Dr. Card referred Plaintiff for treatment by an endodontic, but Dr. Cannon denied the referral. *Id*. He also claims that although he was approved for medical shoes and a splint, Centurion failed to provide them. *Id*. Plaintiff alleges that his previous apicoectomy was done May 6, 2008, and it took 14–16 years for parts of the filling to dissolve, leaving a pin hole in Plaintiff's upper tooth. *Id*.

## IV.  DISCUSSION

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs regarding the denial of necessary dental surgery,[1] and the denial of Plaintiff's hand splint and the denial—because he is not diabetic—of his medical shoes.[2]  (Doc. 1, at 5–8.)

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

---

[1]  The November 14, 2023 response from LCF's Medical Department states that Plaintiff had:

> 20 dental encounters since 1/1/23, including visits with Dr. Cannon.  Dental has discussed the previous failed apical surgery which has led to the cyst and chronic infection he is currently complaining of.  Mr. Davis has been sent off-site to oral surgery per his request.  Dental recommendations have consistently been extraction of teeth 9 and 10, with replacement via partial dentures.  Mr. Davis has declined the treatment plan and requested time to consider this option.  Extraction is the recommendation by Dr. Cannon per his notes.

(Doc. 1–1, at 19.)

[2]  The March 14, 2024 grievance response indicates that Plaintiff was examined and the findings did not support his request for a wrist brace and medical shoes.  *See* Doc. 1–1, at 57.

Plaintiff must also satisfy the subjective prong.  The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer*, 511 U.S. at 837 (emphasis added).  An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).  "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'"  *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

Plaintiff has failed to show that any defendant was deliberately indifferent regarding his medical or dental care.  Plaintiff was seen by George Harper, DDS, on October 26, 2023. (Doc. 23, at 4–5, sealed).  The exam type is noted as "Treatment" and "Triage exam," and the assessment notes state that:

> Patient concerned about front teeth that had root canals.  He previously had 2 apical surgeries in this area.  Swelling is present at the apices of teeth 9 and 10 with chronic infection.  Patient wants to have apical surgery redone.  Patient does not want teeth out.  I am recommending that teeth 9 and 10 be removed.

*Id*. at 4.  The noted plan was for extraction of teeth 9 and 10.  *Id*. at 4–5.  Treatment performed at the visit included ultrasonic scaling followed by hand instrumentation, polish, and OHI-flossing. *Id*. at 5.

Plaintiff had a nurse visit on November 19, 2023, where he complained of pain due to the cyst in his mouth.  *Id*. at 14.  The nurse's notes reflect that he will be placed on dental sick call. *Id*. at 15.  Plaintiff had a dental examination on November 21, 2023, with Paul Overman, DDS.

*Id*. at 17–18.  Pano x-rays were taken, and the assessment notes indicate that in comparing the bone loss above #9 and #10, "not much change, if any has happened.  Pt. reports the bump above the teeth is getting bigger."  *Id*. at 17.  The treatment notes provide that "Pt. was scheduled to see Dr. Smith, but he advised that he was waiting for information from Dr. Cannon prior to exam and/or treatment.  No treatment or medications at this appointment."  *Id*. at 18.

Plaintiff had another dental examination scheduled for December 7, 2023, with David Smith, DDS.  *Id*. at 22.  The examination had to be rescheduled due to a lockdown.  *Id*.  Plaintiff had a visit with Rachel Crowell, DA, on January 10, 2024.  *Id*. at 28.  Plaintiff requested to be rescheduled for his dental examination that was cancelled, and the notes indicate that he was rescheduled.  *Id*.  Plaintiff met with Rachel Crowell, DA, again on January 17, 2024, requesting the rescheduled dental visit and was advised that it had been rescheduled and that he should "watch call outs."  *Id*. at 30.  Plaintiff had a dental examination with Paul Overman, DDS, on January 23, 2024.  *Id*. at 32–33.  The treatment notes from the visit state that:

> Pt issued Acetaminophen in clinic & I authorized cephalexin at this time. I advised pt I will pass along information to Dr. Cannon. I advised pt. it may not be possible to have him transferred to a different facility for dental treatment. I advised pt. I have no control concerning these decisions. I stressed to pt. that Dr. Card may also advised him that teeth could be extracted & "cysts" removed & area would heal. I advised pt. that teeth that have had endo tx can still fail over time.  pt. wanting information passed on to Dr. Cannon so he can be sent out to have 2nd surgery in area. See entry on 7-27-023. I called Dr. Cannon & advised me that can be done is extraction of #9 & 10, possibly by local oral surgeon Pt. was called back to clinic to have him sign a refusal for extraction of #9 & #10 at this time.

*Id*. (errors in original); *see also id*. at 72 (signed refusal of treatment).  Treatment notes entered later that day indicated that a "[p]ano was taken during appointment today."  *Id*. at 35.

Plaintiff's medical records show that he failed to come to a dental sick call scheduled for

February 12, 2024, with David Smith, DDS. *Id*. at 112. Plaintiff had a dental examination on February 22, 2024, with George Harper, DDS. *Id*. at 114–15. The treatment notes indicate that Plaintiff "has failing endodontic treatment on teeth 9 and 10. Patient has received antibiotic over 5 times for this area and has just finished Cephalexin . . .." *Id*. at 114. The assessment states that:

> I addressed this problem with patient on 10/26/24[3] stating that the teeth need to be removed. Patient adamant that he will get an apicoectomy, however this treatment was denied. I informed the patient, DON, and HSA that I will not prescribe antibiotics for the 6th time for this infection. I informed patient that this situation puts his health at risk and he needs to address the infection by removing the teeth. If he thinks he can get an apicoectomy, he needs to work with the proper channels.

*Id*. The treatment notes provide: "I've informed the DON and the HSA of the patient's condition and to expect contact from him. I've stress[ed] the importance of removing the infection (by removing the teeth) and that he cannot continue to be on antibiotics every other month." *Id*. at 115.

Plaintiff had another dental examination on March 5, 2024, with Paul Overman, DDS. *Id*. at 116–18. Plaintiff reported swelling above teeth 9 and 10, and sought Keflex to bring the swelling and pain down. *Id*. at 116. The assessment states that "Teeth need to be extracted." *Id*. The treatment notes state that:

> I again advised pt. that taking antibiotics over & over does not solve the problem--treats the symptom. I advised pt he needs to get the teeth extracted. I stressed to pt. that going through different antibiotics because last one stopped working can get to where only antibiotics are not available will work. I stressed to pt. that antibiotics don [sic]
> I stressed to pt. again that taking antibiotics treats the infection--does not get rid of the cause, and infection will return. Switching antibiotics when one stops working will narrow the field of

---

[3] It appears that the reference is to the appointment on October 26, 2023.

> available antibiotics when needed. Oral antibiotics don't affect
> area where there is infection--in [sic] affects other needed bacteria-
> -especially the GI tract. It is possible to get a bad GI infection from
> staying on ab too long & a different ab appears & spread where
> even more major problems occur. I advised pt. to take antibiotics
> only when needed & get rid of problem that is causing the
> infection. Pt. wants to get rid of swelling/pain at this time. I
> authorized Cephalexin & acetaminophen at this time.

*Id*. at 116–17.

Plaintiff had another dental examination with Paul Overman, DDs, on August 21, 2024, due to his request for teeth cleaning.  *Id*. at 148–49.  The medical records reflect hat Plaintiff wanted his teeth cleaned and reported that tooth #11 felt sharp and asked if it could be smoothed and shaped at the appointment.  *Id*. at 148.  The treatment notes states that:

> FM scaled with hand & ultrasonic scalers. I used high speed hand
> piece & diamond but to reduce sharp pointed edge on #11, shaping
> more like #6, but keeping change/reduction to a minimum. Teeth
> were polished with prophy paste. Pt. needs to be rescheduled for x-
> rays & check tooth #3--charted as having mesial decay. OHI.

*Id*.

This Court has held that "[a]t least one panel of the Tenth Circuit has held that an extraction-only policy *may* be constitutionally deficient *under certain circumstances*."  *Dudley v. KDOC*, 2023 WL 3686566, at *2 (D. Kan. 2023) (emphasis added) (citing *see Stack v. McCotter*, F. App'x 383, 390 (10th Cir. 2003) (unpublished)).  Even if there is an extraction-only policy, the question would be whether the policy violated a plaintiff's Eighth Amendment rights.  *See Amaro v. New Mexico Corrs. Dep't*, 2022 WL 796358, at *6 (D. N.M. 2022) ("The Court is not obligated to determine in the abstract whether an extraction-only policy is constitutionally impermissible. The question here is whether Mr. Amaro has alleged enough facts to show that the extraction-only policy violated his Eighth Amendment rights in this case."), *adopting report and recommendation* 2022 WL 1090601 (D. N.M. 2022).

Plaintiff's preference for another root canal simply constitutes a disagreement with the recommended course of treatment. Courts have found that this does not constitute deliberate indifference. *See See Ciaprazi v. Jacobson*, 2016 WL 4619267, at *4 (S.D.N.Y. 2016) ("But even if Ciaprazi's teeth could have been treated with root-canal therapy, it would not violate the Eighth Amendment for DOCCS to offer him only extraction. As noted by Dr. D'Silva, many states and localities have policies of offering extraction and not root canals."); *see also Mathews v. Raemisch,* 513 F. App'x 605, 606-07 (7th Cir. 2013) (affirming summary judgment on inmate's claim of deliberate indifference to his infected tooth where the prison refused to provide him with a root canal procedure but did offer extraction because the "dispute is over nothing but the choice of one routine medical procedure versus another"); *Galindo v. Cate*, No. 1:11-CV-00023-DLB PC, 2011 WL 6100623, at *2–3 (E.D. Cal. Dec. 6, 2011) (finding that failing to offer a root canal did not constitute deliberate indifference when a prison dentist identified extraction as an appropriate remedy).

In *Davis v. Collins*, the plaintiff was similarly diagnosed with a failed root canal, and it was recommended that the tooth be extracted because it was non-restorable. *Davis v. Collins*, 230 F. App'x 172, 173 (3rd Cir. 2007). Although an oral surgeon gave a second opinion and recommended that an apicoectomy be performed, the Utilization Review Committee denied the apicoectomy and the tooth was extracted *Id*. The plaintiff alleged that the failure to perform the apicoectomy constituted deliberate indifference. *Id*. The Third Circuit affirmed the dismissal, finding that "the decision not to perform the apicoectomy only constituted a medical disagreement regarding Davis' dental treatment" and "this is insufficient to establish a constitutional claim." *Id*. at 174.

A similar conclusion was reached in *Davis v. Norris*, where one examining dentist had

recommended a root canal, and another had recommended extraction. *Davis v. Norris*, 1999 WL 1006437, at *1 (8th Cir. 1999). The plaintiff claimed that the defendants showed deliberate indifference to his serious dental needs by denying him a root canal. *Id*. The Eighth Circuit held that "the record shows only a disagreement over a particular type of dental procedure." *Id*. (citations omitted).

In *Noe v. United States*, the court found that a "no crowns" policy did not violate the plaintiff's Eighth Amendment rights. *Noe v. United States*, 2022 WL 18587706, at *10 (D. Colo. 2022). The court noted that courts have recognized that "offering extraction as the 'only dental care' available at a facility generally violates the Eighth Amendment." *Id*. (citing *Heitman v. Gabriel*, 524 F. Supp. 622, 627 (W.D. Mo.1981) ("While it is by no means unprecedented for an old-fashioned prison regime to offer tooth extraction as the only dental care, no case has been found where such a limitation has been deemed judicially tolerable."); *c.f. Baughman v. Garcia*, 254 F. Supp. 3d 848, 876 (S.D. Tex. 2017) (holding that a policy *denying standard fillings* if the inmate could not afford them, and instead only offering extractions, could give rise to an Eighth Amendment violation), *aff'd sub nom., Baughman v. Seale*, 761 F. App'x 371 (5th Cir. 2019). The court in *Noe* went on to state that "beyond that 'extreme case,' '[t]he majority of courts examining this issue have found that a prison's refusal to restore a tooth rather than extract it is not an Eighth Amendment violation if extraction is a medically appropriate treatment for the prisoner.' " *Id*. (citing *Bargo v. Kelley*, No. 17-cv-00281-KGB-PSH, 2020 WL 1172206, at *8 (E.D. Ark. Jan. 23, 2020) (emphasis omitted), *report and recommendation adopted*, 2020 WL 1165761 (E.D. Ark. Mar. 10, 2020); *see also Greywind v. Podrebarac*, No. 1:10-CV-006, 2011 WL 4750962, at *7 (D. N.D. Sept. 12, 2011) ("[A] number of courts have held that prison policies that offer extraction in lieu of such things as crowns, implants, and

even root canals in certain situations do not violate the Eighth Amendment." (collecting cases)),

*report and recommendation adopted*, 2011 WL 4743751 (D.N.D. Oct. 5, 2011), *aff'd*, 471 F.

App'x 544 (8th Cir. 2012))).  The court in *Noe* also noted that:

> In *James v. Penn. Dept. of Corr.*, for example, the Third Circuit
> held that there was no Eighth Amendment violation when a tooth
> was extracted despite the fact that a root canal, which was not
> permitted by the facility's policy, would have saved it. 230 F.
> App'x 195, 196-98 (3d Cir. 2007). Similarly, in *Koon v. Udah*, a
> district court found no Eighth Amendment violation when a
> facility declined to provide a root canal and crown at state expense
> on a tooth with "a minor infection or abscess," and instead only
> offered extraction of the tooth. No. 8:06–2000, 2008 WL 724041,
> at *7 (D.S.C. Mar. 17, 2008). Most like this case, in *Del Muro v.
> Federal Bureau of Prisons*, the plaintiff alleged that the facility
> only provided fillings and extractions. No. 5:03-CV-214-B, 2004
> WL 1542216, at *3 (N.D. Tex. July 8, 2004). The plaintiff had
> three teeth filled, but the fillings fell out because of the extent of
> tooth decay. *Id.* The plaintiff was offered an extraction, but
> refused, contending that the denial of crowns or a bridge
> constituted an Eighth Amendment violation. *Id.* The district court
> held that the plaintiff's preference for crowns or a bridge as
> opposed to fillings and eventual extraction merely constituted an
> unactionable disagreement with the course of treatment. *Id.* at *3-
> 4.

*Id.*

In *Leachman v. Harris Cty., Texas*, the Fifth Circuit found that the court has "concluded a

prisoner failed to state a claim under the Eighth Amendment based on the jail's provision of

'extraction of his injured teeth' rather than 'more expensive restorative treatment.'"  *Leachman*

*v. Harris Cty., Texas*, 779 F. App'x 234, 238 (5th Cir. 2019) (citation omitted).  The court also

noted that "our sister circuits have found that similar disputes about a course of dental treatment

do not state an Eighth Amendment violation."  *Id.* (citing *Mathews v. Raemisch*, 513 F. App'x

605, 607 (7th Cir. 2013) (extraction instead of a root canal does not amount to deliberate

indifference to a serious medical need); *James v. Penn. Dep't of Corr.*, 230 F. App'x 195, 197

(3d Cir. 2007) (per curiam) (extraction of an abscessed tooth was not an Eighth Amendment violation even where another possible treatment, a root canal, was not available pursuant to prison policy); *Willis v. Washington*, 172 F.3d 54 (7th Cir. 1999) (unpublished table decision) (no Eighth Amendment violation where prisoner alleged "he was told he either could live with the pain or have his teeth pulled" and argued "he should have been offered alternatives to extraction")); *see also Lamb v. Advanced Corr. Healthcare, Inc.*, No. 17-C-383, 2018 WL 3150227, at *6 (E.D. Wis. June 27, 2018) ("As to a 'pull only,' or 'extraction only' policy, the majority rule appears to be that offering extraction in lieu of a root canal or other more expensive treatment for tooth decay does not violate the Eighth Amendment if extraction is medically appropriate and will resolve the issue." (quotation omitted)).

In the instant case, nothing suggests that there is an extraction-only policy. The Report shows that Plaintiff was denied his preferred root canals due to dentists' recommendations, not based on an extraction-only policy. KDOC IMPP 16-102D explicitly provides that oral treatment is *not* limited to extractions. Nothing suggests that Plaintiff was denied a root canal for financial reasons or pursuant to some unwritten extraction-only policy. "As part of its contract, Centurion is required to comply with KDOC's [IMPPs] including IMPP 16-102D, Oral Health Care Services." (Doc. 20–5, at ¶ 9, affidavit of Warden Jesse Howes.)

Plaintiff was examined by more than one dentist[4] that recommended extractions. Dr. Cannon submitted an affidavit that provides that Plaintiff's "medical history was reviewed, and it was noted in his chart that [teeth #9 and #10] were already shortened due to previous apicoectomies (endodontic treatment), that were done before [Plaintiff] was incarcerated and which failed to prevent infection from recurring." (Doc. 20–3, at ¶ 7.) Plaintiff was informed

---

[4]  At a dental examination on October 26, 2023, George Harper, DDS, recommended extractions, and at a dental examination on March 5, 2024, Paul Overman, DDS, stated that the teeth need to be extracted.

that the two teeth "held a chronic apical cyst due to reinfection of the canal space and periapical tissues," and "additional endodontic treatments such as an apicoectomy or retreatment of root canals could not be completed as tooth #9 may have a fractured root that is causing the abscess and is therefore a non-restorable tooth." *Id*. at ¶¶ 9, 10.  Plaintiff was advised that extraction was the ideal treatment "to avoid reinfection." *Id*. at ¶ 11.  After Plaintiff was allowed to have an offsite evaluation by an oral surgeon—Dr. Card—the evaluation was discussed with Dr. Cannon and Dr. Cannon has declared that Dr. Card also recommended extraction of the teeth. *Id*. at ¶ 13.

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).  Plaintiff has failed to show that any defendant was deliberately indifferent regarding his dental care.

The medical records also reflect that Plaintiff had multiple nurse and doctor visits regarding other medical issues, including his hand/wrist, feet, and thumb.  Plaintiff was prescribed medication and had offsite visits, including with KU neurology.  Jeanie Burk was the Health Service Administrator with Centurion from November 2022 to April 2024.  (Doc. 20–4, at ¶ 6.)  She declares in her affidavit that prior to her leaving her position in April 2024, Plaintiff was denied medical appliances because the medical provider's medical examination of both his feet and his wrist indicated no functional deficits, and therefore he did not possess a need for such medical devices. *Id*. at ¶ 12.  The Report provides that Plaintiff was given a splint at his April 4, 2024 appointment with a neurologist at KU Medical Center.  (Doc. 20, at 4.)  Also, on

June 28, 2024, Plaintiff signed a "Receipt of Medical Equipment/Appliance Form" noting his receipt of "1 pr Life Walker shoes." *Id*. at 152. On July 18, 2024, Plaintiff signed another "Receipt of Medical Equipment/Appliance Form." *Id*. at 151. The receipt shows that Plaintiff received Life Walker Strap Shoes. *Id*. Plaintiff has failed to show that any defendant was deliberately indifferent regarding his alleged need for a wrist splint or medical shoes. Plaintiff should show good cause why his Eighth Amendment claims should not be dismissed for failure to state a claim.

## V. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.

Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered for the reasons stated herein. Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 16, 2025,** in which to respond to the Report at Doc. 20, and to show good cause, in writing to the undersigned, why Plaintiff's claims should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated April 15, 2025, in Kansas City, Kansas.**

<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**