IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**KEVIN TAMAR DAVIS,**

    **Plaintiff,**

    v.                                                                                                    **CASE NO. 24-3143-JWL**

**JESSE HOWES, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, Kevin Tamar Davis, who is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. On September 27, 2024, the Court entered a Memorandum and Order (Doc. 14) ("M&O") finding that the proper processing of Plaintiff's claims in Counts I and II could not be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials. Accordingly, the Court ordered KDOC officials to prepare and file a *Martinez* Report for the claims in Counts I and II. The Court also directed Plaintiff to show good cause why his claims in Count III should not be dismissed. Plaintiff's claims in Count III were subsequently dismissed. (Doc. 18.)

The Court's M&O provides that "[o]nce the Report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A." (Doc. 14, at 10.) The *Martinez* Report (Doc. 20) (the "Report") was filed, and Plaintiff filed a response (Doc. 25) and an objection to the Report (Doc. 26). On April 15, 2025, the Court entered a Memorandum and Order (Doc. 31) ("M&O II"), granting Plaintiff until May 16, 2025, in which to respond to the Report and to show good cause why his claims should not be dismissed for the reasons set forth

in the M&O II.  This matter is before the Court on Plaintiff's response (Doc. 34).[1]

Plaintiff's allegations are set forth in detail in the Court's M&O.  The findings from the Report are set forth in detail in the Court's M&O II.  In summary, Plaintiff alleges in Count I that Defendants Howe and Cannon acted with deliberate indifference to his serious medical needs regarding his need for dental surgery.  Plaintiff alleges that he is being denied dental surgery recommended by Dr. Card.  Plaintiff alleges that he was told that Dr. Cannon, KDOC's Regional Dental director at LCF, denied Dr. Card's referral because there was no dental specialist contracted with the KDOC to perform the bifurcated surgery, and instead Dr. Cannon recommended extraction of two (good) front teeth with replacement via partial dentures.

As Count II, Plaintiff alleges that Defendant Burke was deliberately indifferent to Plaintiff's need for medical equipment and a medical appliance.  Plaintiff alleges that despite Dr. Mariah Kalma's finding that Plaintiff should continue to be approved for both medical shoes and the wrist brace/splint, HSA Jeanie Burk denied Dr. Kalma's request for the splint and shoes, informing Plaintiff that he could not receive the medical shoes because he did not have diabetes.

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs regarding the denial of necessary dental surgery,[2] and the denial of Plaintiff's hand splint and the denial—because he is not diabetic—of his medical shoes.[3]  (Doc. 1, at 5–8.)

---

[1] Plaintiff submitted a response with missing pages at Doc. 32.  Plaintiff resubmitted the response with the missing pages included at Doc. 33, and again at Doc. 34.

[2] The November 14, 2023 response from LCF's Medical Department states that Plaintiff had:

> 20 dental encounters since 1/1/23, including visits with Dr. Cannon.  Dental has discussed the previous failed apical surgery which has led to the cyst and chronic infection he is currently complaining of.  Mr. Davis has been sent off-site to oral surgery per his request.  Dental recommendations have consistently been extraction of teeth 9 and 10, with replacement via partial dentures.  Mr. Davis has declined the treatment plan and requested time to consider this option.  Extraction is the recommendation by Dr. Cannon per his notes.

(Doc. 1–1, at 19.)

[3] The March 14, 2024 grievance response indicates that Plaintiff was examined and the findings did not support his request for a wrist brace and medical shoes.  *See* Doc. 1–1, at 57.

The Court found in the M&O II that Plaintiff failed to show that any defendant was deliberately indifferent regarding his medical or dental care. Plaintiff was seen by George Harper, DDS, on October 26, 2023. (Doc. 23, at 4–5, sealed). The exam type is noted as "Treatment" and "Triage exam," and the assessment notes state that:

> Patient concerned about front teeth that had root canals. He previously had 2 apical surgeries in this area. Swelling is present at the apices of teeth 9 and 10 with chronic infection. Patient wants to have apical surgery redone. Patient does not want teeth out. I am recommending that teeth 9 and 10 be removed.

*Id*. at 4. The noted plan was for extraction of teeth 9 and 10. *Id*. at 4–5. Treatment performed at the visit included ultrasonic scaling followed by hand instrumentation, polish, and OHI-flossing. *Id*. at 5.

Plaintiff had a nurse visit on November 19, 2023, where he complained of pain due to the cyst in his mouth. *Id*. at 14. The nurse's notes reflect that he will be placed on dental sick call. *Id*. at 15. Plaintiff had a dental examination on November 21, 2023, with Paul Overman, DDS. *Id*. at 17–18. Pano x-rays were taken, and the assessment notes indicate that in comparing the bone loss above #9 and #10, "not much change, if any has happened. Pt. reports the bump above the teeth is getting bigger." *Id*. at 17. The treatment notes provide that "Pt. was scheduled to see Dr. Smith, but he advised that he was waiting for information from Dr. Cannon prior to exam and/or treatment. No treatment or medications at this appointment." *Id*. at 18.

Plaintiff had another dental examination scheduled for December 7, 2023, with David Smith, DDS. *Id*. at 22. The examination had to be rescheduled due to a lockdown. *Id*. Plaintiff had a visit with Rachel Crowell, DA, on January 10, 2024. *Id*. at 28. Plaintiff requested to be rescheduled for his dental examination that was cancelled, and the notes indicate that he was rescheduled. *Id*. Plaintiff met with Rachel Crowell, DA, again on January 17, 2024, requesting

the rescheduled dental visit and was advised that it had been rescheduled and that he should "watch call outs." *Id*. at 30.  Plaintiff had a dental examination with Paul Overman, DDS, on January 23, 2024. *Id*. at 32–33.  The treatment notes from the visit state that:

> Pt issued Acetaminophen in clinic & I authorized cephalexin at this time. I advised pt I will pass along information to Dr. Cannon. I advised pt. it may not be possible to have him transferred to a different facility for dental treatment. I advised pt. I have no control concerning these decisions. I stressed to pt. that Dr. Card may also advised him that teeth could be extracted & "cysts" removed & area would heal. I advised pt. that teeth that have had endo tx can still fail over time.  pt. wanting information passed on to Dr. Cannon so he can be sent out to have 2nd surgery in area. See entry on 7-27-023. I called Dr. Cannon & advised me that can be done is extraction of #9 & 10, possibly by local oral surgeon Pt. was called back to clinic to have him sign a refusal for extraction of #9 & #10 at this time.

*Id*. (errors in original); *see also id*. at 72 (signed refusal of treatment).  Treatment notes entered later that day indicated that a "[p]ano was taken during appointment today." *Id*. at 35.

Plaintiff's medical records show that he failed to come to a dental sick call scheduled for February 12, 2024, with David Smith, DDS. *Id*. at 112.  Plaintiff had a dental examination on February 22, 2024, with George Harper, DDS. *Id*. at 114–15.  The treatment notes indicate that Plaintiff "has failing endodontic treatment on teeth 9 and 10.  Patient has received antibiotic over 5 times for this area and has just finished Cephalexin . . .." *Id*. at 114.  The assessment states that:

> I addressed this problem with patient on 10/26/24[4] stating that the teeth need to be removed. Patient adamant that he will get an apicoectomy, however this treatment was denied. I informed the patient, DON, and HSA that I will not prescribe antibiotics for the 6th time for this infection. I informed patient that this situation puts his health at risk and he needs to address the infection by removing the teeth. If he thinks he can get an apicoectomy, he needs to work with the proper channels.

---

[4] It appears that the reference is to the appointment on October 26, 2023.

4

*Id*. The treatment notes provide: "I've informed the DON and the HSA of the patient's condition and to expect contact from him. I've stress[ed] the importance of removing the infection (by removing the teeth) and that he cannot continue to be on antibiotics every other month." *Id*. at 115.

Plaintiff had another dental examination on March 5, 2024, with Paul Overman, DDS. *Id*. at 116–18. Plaintiff reported swelling above teeth 9 and 10, and sought Keflex to bring the swelling and pain down. *Id*. at 116. The assessment states that "Teeth need to be extracted." *Id*. The treatment notes state that:

> I again advised pt. that taking antibiotics over & over does not solve the problem--treats the symptom. I advised pt he needs to get the teeth extracted. I stressed to pt. that going through different antibiotics because last one stopped working can get to where only antibiotics are not available will work. I stressed to pt. that antibiotics don [sic]
> I stressed to pt. again that taking antibiotics treats the infection--does not get rid of the cause, and infection will return. Switching antibiotics when one stops working will narrow the field of available antibiotics when needed. Oral antibiotics don't affect area where there is infection--in [sic] affects other needed bacteria--especially the GI tract. It is possible to get a bad GI infection from staying on ab too long & a different ab appears & spread where even more major problems occur. I advised pt. to take antibiotics only when needed & get rid of problem that is causing the infection. Pt. wants to get rid of swelling/pain at this time. I authorized Cephalexin & acetaminophen at this time.

*Id*. at 116–17.

Plaintiff had another dental examination with Paul Overman, DDs, on August 21, 2024, due to his request for teeth cleaning. *Id*. at 148–49. The medical records reflect hat Plaintiff wanted his teeth cleaned and reported that tooth #11 felt sharp and asked if it could be smoothed and shaped at the appointment. *Id*. at 148. The treatment notes states that:

> FM scaled with hand & ultrasonic scalers. I used high speed hand

> piece & diamond but to reduce sharp pointed edge on #11, shaping more like #6, but keeping change/reduction to a minimum. Teeth were polished with prophy paste. Pt. needs to be rescheduled for x-rays & check tooth #3--charted as having mesial decay. OHI.

*Id.*

This Court has held that "[a]t least one panel of the Tenth Circuit has held that an extraction-only policy *may* be constitutionally deficient *under certain circumstances*." *Dudley v. KDOC*, 2023 WL 3686566, at *2 (D. Kan. 2023) (emphasis added) (citing *see Stack v. McCotter*, F. App'x 383, 390 (10th Cir. 2003) (unpublished)). In the instant case, nothing suggests that there is an extraction-only policy. The Report shows that Plaintiff was denied his preferred root canals due to dentists' recommendations, not based on an extraction-only policy. KDOC IMPP 16-102D explicitly provides that oral treatment is *not* limited to extractions. Nothing suggests that Plaintiff was denied a root canal for financial reasons or pursuant to some unwritten extraction-only policy. "As part of its contract, Centurion is required to comply with KDOC's [IMPPs] including IMPP 16-102D, Oral Health Care Services." (Doc. 20–5, at ¶ 9, affidavit of Warden Jesse Howes.)

Even if there is an extraction-only policy, the question would be whether the policy violated a plaintiff's Eighth Amendment rights. *See Amaro v. New Mexico Corrs. Dep't*, 2022 WL 796358, at *6 (D. N.M. 2022) ("The Court is not obligated to determine in the abstract whether an extraction-only policy is constitutionally impermissible. The question here is whether Mr. Amaro has alleged enough facts to show that the extraction-only policy violated his Eighth Amendment rights in this case."), *adopting report and recommendation* 2022 WL 1090601 (D. N.M. 2022). In the M&O II, the Court cited multiple cases finding no Eighth Amendment violation under circumstances similar to this case. *See* Doc. 31, at 12–15.

Plaintiff was examined by more than one dentist[5] that recommended extractions. Dr. Cannon submitted an affidavit that provides that Plaintiff's "medical history was reviewed, and it was noted in his chart that [teeth #9 and #10] were already shortened due to previous apicoectomies (endodontic treatment), that were done before [Plaintiff] was incarcerated and which failed to prevent infection from recurring." (Doc. 20–3, at ¶ 7.) Plaintiff was informed that the two teeth "held a chronic apical cyst due to reinfection of the canal space and periapical tissues," and "additional endodontic treatments such as an apicoectomy or retreatment of root canals could not be completed as tooth #9 may have a fractured root that is causing the abscess and is therefore a non-restorable tooth." *Id*. at ¶¶ 9, 10. Plaintiff was advised that extraction was the ideal treatment "to avoid reinfection." *Id*. at ¶ 11. After Plaintiff was allowed to have an offsite evaluation by an oral surgeon—Dr. Card—the evaluation was discussed with Dr. Cannon and Dr. Cannon has declared that Dr. Card also recommended extraction of the teeth. *Id*. at ¶ 13.

The medical records also reflect that Plaintiff had multiple nurse and doctor visits regarding other medical issues, including his hand/wrist, feet, and thumb. Plaintiff was prescribed medication and had offsite visits, including with KU neurology. Jeanie Burk was the Health Service Administrator with Centurion from November 2022 to April 2024. (Doc. 20–4, at ¶ 6.) She declares in her affidavit that prior to her leaving her position in April 2024, Plaintiff was denied medical appliances because the medical provider's medical examination of both his feet and his wrist indicated no functional deficits, and therefore he did not possess a need for such medical devices. *Id*. at ¶ 12. Also, on June 28, 2024, Plaintiff signed a "Receipt of Medical Equipment/Appliance Form" noting his receipt of "1 pr Life Walker shoes." *Id*. at 152. On July 18, 2024, Plaintiff signed another "Receipt of Medical Equipment/Appliance Form." *Id*. at

---

[5] At a dental examination on October 26, 2023, George Harper, DDS, recommended extractions, and at a dental examination on March 5, 2024, Paul Overman, DDS, stated that the teeth need to be extracted.

7

151. The receipt shows that Plaintiff received Life Walker Strap Shoes. *Id*.

The Court ordered Plaintiff to show good cause why his Eighth Amendment claims should not be dismissed for failure to state a claim. In his response, Plaintiff argues that neither Dr. Cannon nor Dr. Card are qualified experts in Endodontics. (Doc. 34, at 4.) Plaintiff also argues that Dr. Cannon incorrectly referred Plaintiff to a specialist in Human Maxillary, and then Dr. Card "picked up on this incorrect referral," and referred Plaintiff to a qualified expert in endodontics. *Id*. Plaintiff argues that the Court should not accept Dr. Cannon's opinion without the opinion of an endodontics specialist. *Id*. Plaintiff argues that "endodontics could have update [sic] technology procedures when it comes to chronic apical cyst to avoid analog ideal treatment wherewith two cent opinion from non-qualified expert that practice therein the dentistry field." *Id*. at 8.

Plaintiff takes issue with the finding that he had been provided with Life Walker shoes and he was doing better to the extent that he was able to play basketball. Plaintiff responds "yeah doing much better after defendant's deliberate unreasonable delay/unnecessary and wanton infliction of pain . . . of providing medical shoes a year later. LOL!!!" *Id*. at Doc. 34, n.4. Plaintiff also states that he did not receive a hand splint at his KU Medical Center visit because they were not allowed to provide a prisoner with any medical equipment or appliance unless approved by Centurion. *Id*. at 6. Plaintiff alleges that it took another director—HAS Angel Sutton—to come in and get with Dr. Melissa Hildebrandt to see that Plaintiff had an ongoing hand/feet deficit and therefore needed the medical devices. *Id*. at 9.

Plaintiff has failed to show good cause why his claims should not be dismissed for the reasons set forth in the Court's M&O II. A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel

and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

In *Davis v. Collins*, the plaintiff was similarly diagnosed with a failed root canal, and it was recommended that the tooth be extracted because it was non-restorable. *Davis v. Collins*, 230 F. App'x 172, 173 (3rd Cir. 2007).  Although an oral surgeon gave a second opinion and recommended that an apicoectomy be performed, the Utilization Review Committee denied the apicoectomy and the tooth was extracted *Id*.  The plaintiff alleged that the failure to perform the apicoectomy constituted deliberate indifference. *Id*.  The Third Circuit affirmed the dismissal, finding that "the decision not to perform the apicoectomy only constituted a medical disagreement regarding Davis' dental treatment" and "this is insufficient to establish a constitutional claim." *Id*. at 174.

A similar conclusion was reached in *Davis v. Norris*, where one examining dentist had recommended a root canal, and another had recommended extraction. *Davis v. Norris*, 1999 WL 1006437, at *1 (8th Cir. 1999). The plaintiff claimed that the defendants showed deliberate indifference to his serious dental needs by denying him a root canal. *Id*.  The Eighth Circuit held that "the record shows only a disagreement over a particular type of dental procedure." *Id*. (citations omitted).

In *Leachman v. Harris Cty., Texas*, the Fifth Circuit found that the court has "concluded a prisoner failed to state a claim under the Eighth Amendment based on the jail's provision of 'extraction of his injured teeth' rather than 'more expensive restorative treatment.'" *Leachman v. Harris Cty., Texas*, 779 F. App'x 234, 238 (5th Cir. 2019) (citation omitted).  The court also

noted that "our sister circuits have found that similar disputes about a course of dental treatment do not state an Eighth Amendment violation." *Id*. (citing *Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013) (extraction instead of a root canal does not amount to deliberate indifference to a serious medical need); *James v. Penn. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (per curiam) (extraction of an abscessed tooth was not an Eighth Amendment violation even where another possible treatment, a root canal, was not available pursuant to prison policy); *Willis v. Washington*, 172 F.3d 54 (7th Cir. 1999) (unpublished table decision) (no Eighth Amendment violation where prisoner alleged "he was told he either could live with the pain or have his teeth pulled" and argued "he should have been offered alternatives to extraction")); *see also Lamb v. Advanced Corr. Healthcare, Inc.*, No. 17-C-383, 2018 WL 3150227, at *6 (E.D. Wis. June 27, 2018) ("As to a 'pull only,' or 'extraction only' policy, the majority rule appears to be that offering extraction in lieu of a root canal or other more expensive treatment for tooth decay does not violate the Eighth Amendment if extraction is medically appropriate and will resolve the issue." (quotation omitted)).

Plaintiff's preference for another root canal simply constitutes a disagreement with the recommended course of treatment. Courts have found that this does not constitute deliberate indifference. *See See Ciaprazi v. Jacobson*, 2016 WL 4619267, at *4 (S.D.N.Y. 2016) ("But even if Ciaprazi's teeth could have been treated with root-canal therapy, it would not violate the Eighth Amendment for DOCCS to offer him only extraction. As noted by Dr. D'Silva, many states and localities have policies of offering extraction and not root canals."); *see also Mathews v. Raemisch,* 513 F. App'x 605, 606-07 (7th Cir. 2013) (affirming summary judgment on inmate's claim of deliberate indifference to his infected tooth where the prison refused to provide him with a root canal procedure but did offer extraction because the "dispute is over nothing but

the choice of one routine medical procedure versus another"). Plaintiff has failed to show that any defendant was deliberately indifferent regarding his dental or medical care.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated June 4, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**