IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN TAMAR DAVIS,

    **Plaintiff,**

    v.                                                                                       CASE NO. 24-3143-JWL

JESSE HOWES, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, Kevin Tamar Davis, who is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. On June 4, 2025, the Court entered a Memorandum and Order (Doc. 35) ("M&O") dismissing Plaintiff's remaining claims for failure to state a claim. This matter is before the Court on Plaintiff's Motion to Alter or Amend Judgment (Doc. 37). Because Plaintiff's motion was filed within 28 days after the entry of the order, the Court will treat it as a motion under Rule 59. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

A motion to alter or amend under Fed. R. Civ. P. 59(e) may be granted when "the court has misapprehended the facts, a party's position, or the controlling law." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously

1

through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Motions to alter and amend are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Nelson*, 921 F.3d at 929 (quoting *Servants of the Paraclete*, 204 F.3d at 1012). "[O]nce the district court enters judgment, the public gains a strong interest in protecting the finality of judgments." *Id*. at 929 (citation omitted). Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly. *See Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006); *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 562 (6th Cir. 2016) (relief under R. 59(e) is rare).

Plaintiff argues that the Court unreasonably ruled that Plaintiff "received a[n] Abducted Thumb Spica, Univ, for his paralysis left hand." (Doc. 37, at 2.) Plaintiff cites to his attached Exhibits 1 and 2 for support. *Id*. Plaintiff argues that there was a delay in receiving relief because "it took another director Angela Sutton, HAS [sic] to come in and get w/Dr. Melissa Hildebrandt to see that Davis truly had an ongoing hand/feet deficit and therefore he did in fact possessed [sic] a need for such medical devices." *Id*. Plaintiff alleges that the new evidence—the Abducted Thumb Spica, Univ—was previously unavailable and shows that the prior assessment by Jeanie Burk (the prior HSA) was inaccurate. *Id*. Plaintiff alleges that the fact that he received all of his medical equipment after he filed this case shows that Defendant Burk was deliberately indifferent. *Id*. Plaintiff's exhibit shows his receipt of medical equipment/appliance for "ABDUCTED THUMB SPICA,UNIV. LEFT." (Doc. 37–1.) He also included the form instructions on how to apply the thumb brace. (Doc. 37–2.) The form indicates that the thumb brace is for soft tissue injury to the thumb, arthritis, tendinitis, and deQuervains Syndrome. *Id*.

Plaintiff alleged in his Complaint that Defendant Burke, Health Service Administrator, was deliberately indifferent to Plaintiff's existing serious medical needs relating to medical equipment and appliances. (Doc. 1, at 10.) The Court summarized Plaintiff's allegations as follows:

> Plaintiff alleges that in 2001, his left hand suffered paralysis due to a motor vehicle incident. *Id*. Plaintiff claims that he entered KDOC custody in 2015 with a splint on his left hand.[1] *Id*. . . .. Plaintiff claims that his physician-approved splint was confiscated at HCF on January 16, 2018, and the metal support plate was removed. *Id*. Plaintiff was provided with a new premier wrist brace (splint) without the metal plate on March 3, 2018, and with a second brace/splint on February 12, 2019. *Id*.
> Plaintiff received medical approval for medical shoes on February 16, 2022, due to a prior injury. *Id*. at 7–8. On November 6, 2023, Dr. Mariah Kalma found that Plaintiff should continue to be approved for both medical shoes and the wrist brace/splint. *Id*. at 8. At a sick call on December 20, 2023, Plaintiff was notified that HSA Jeanie Burk denied Dr. Kalma's request for the splint and shoes. *Id*. Burk told Plaintiff he could not receive the medical shoes because he did not have diabetes. *Id*.

(Doc. 14, at 2–3.) Plaintiff attached to his Complaint a March 14, 2024 response to his grievance indicating that Plaintiff was examined and the findings did not support his request for a wrist brace and medical shoes. *See* Doc. 1–1, at 57.

Jeanie Burk's affidavit provides that the issuance of a medical device is not an indefinite order as a patient's medical needs may change over time for any number of reasons and must be re-evaluated to determine if the medical needs still exist. (Doc. 20–4, at ¶ 7.) Plaintiff's wrist brace and medical shoes were denied because the medical provider did not identify any functional issues with Plaintiff's feet or wrist. *Id*. at ¶ 10. Jeanie Burk left her position in April 2024. *Id*. at ¶ 11.

---

[1] Plaintiff also made claims about his ability to carry a satchel he purchased. Because Plaintiff does not address the satchel in his Motion to Alter or Amend, the Court will not address the satchel.

Plaintiff was seen by NP Melissa Hildebrandt on May 1, 2024, and her treatment notes indicate an order for a foot x-ray was "sent" and "pending," and that an "Appliance request for shoes placed." (Doc. 23, at 140.) The notes state that Plaintiff was being seen for feet pain, needing replacement medical shoes, and wanting to address eye drops. *Id*. at 139. The notes do not reflect any complaints regarding the need for a wrist brace. *Id*. at 139–142. NP Hildebrandt signed an Appliance Request Approval Form on May 1, 2024, and the Regional Medical Director approved the request on May 8, 2024. This would have been a little over a month after Plaintiff filed a grievance and months prior to him filing this case on August 19, 2024. Plaintiff signed a "Receipt of Medical Equipment/Appliance Form" regarding the receipt of the shoes on June 28, 2024, and signed another form on July 18, 2024.

Plaintiff was provided with medical shoes, and he has since been provided with the thumb/wrist brace according to his exhibits to his Motion to Alter or Amend. Plaintiff claims that the delay in providing him with the brace and shoes constitutes deliberate indifference. Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff received his medical visit and order for his shoes shortly after he attempted to grieve the issue. Regarding his wrist/thumb brace, Plaintiff was seen by an outside orthopedic

hand specialist on April 3, 2024, and after the consultation, an EMG was recommended and ordered. *Id*. at 107, 122. The treating notes from the orthopedic surgeon, Dr. Jacob Brubacher, indicate that Plaintiff reported that he injured his left thumb 20 years ago:

> and since that time, he has had some increased laxity. It bothers him occasionally but his main complaint is he wakes up from sleep with his whole hand being numb. It occasionally goes numb and [he] has to shake his hand out in order to wake it up. This is bothersome to him. He has not had previous injuries or surgery.

*Id*. at 107. Plaintiff has failed to allege the type of substantial harm necessary to find that the delay was the result of deliberate indifference.

Regarding his dental care, Plaintiff argues that he was referred to a specialist in the "wrong dentistry practice," and that he should have been referred to an endodontics specialist instead of the referral he received to the oral and maxillofacial surgeon. Plaintiff then argues that Defendants violated state law and IMPP 16-102D II L. *Id*. at 3.

Plaintiff has not shown that any defendant was deliberately indifferent by failing to refer him to a specialist that specializes in a procedure that was not recommended by any of the dentists examining Plaintiff. They determined that another root canal was not recommended based on Plaintiff's medical history and prior failed root canals. Plaintiff was referred to a provider that specializes in the procedure they recommended based on Plaintiff's medical history. *See Morris v. Berkebile*, 2015 WL 5474469, at *6–7 (D. Colo. 2015) (finding that where plaintiff wanted to be referred to an ENT specialist "as he believed he needed to be," the decision whether or not to refer a patient to a specialist is a "classic matter or medical judgment" and does not rise to the level of deliberate indifference") (citing *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)). "'[A]bsent an extraordinary degree of neglect,' where a doctor exercises his

5

considered medical judgment not to consult a specialist, a plaintiff cannot satisfy the subjective component." *Id*. at *7 (citing *Self*, 439 F.3d at 1232).

Plaintiff mentions state law and IMPP 16-102D II L, and suggests that they were violated due to a failure to schedule surgery, and a referral to the wrong type of specialist. (Doc. 37, at 3–4.) However, the failure to comply with state law or IMPPs does not state a constitutional violation. Violations of state law or prison regulations do not provide a cause of action under § 1983. Plaintiff must state a federal constitutional violation. State statutes do not provide a basis for liability under § 1983 which only protects rights secured by the Constitution and laws of the United States. *D.L. v. United Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (finding that "Plaintiffs' citations to Kansas case law to support their claim . . . is unavailing, as § 1983 affords a remedy for violations of federal law and does not 'provide a basis for redressing violations of *state* law.'") (citation omitted).

Likewise, the violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation).

Plaintiff does not meet the exacting standard for relief under Fed. R. Civ. P. 59(e). In sum, Plaintiff has failed to meet the standard required for this Court to alter or amend its June 4, 2025 Order and Judgment, and that ruling stands.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Alter or Amend Judgment (Doc. 37) is **denied.**

**IT IS SO ORDERED**.

**Dated June 13, 2025, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
